3:23-mj-00144

DISTRICT OF OREGON: ss,                        AFFIDAVIT OF DAVID SLAFSKY

## Affidavit in Support of a Criminal Complaint

I, David Slafsky, being first duly sworn, hereby depose and state as follows:

## Introduction and Agent Background

1.      I am a Special Agent with Homeland Security Investigations (HSI) and have been since March of 2022. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am authorized by law to conduct investigations and to make arrests for felony offenses. I am currently assigned to the Assistant Special Agent in Charge, Portland, Oregon. I was previously employed as a Special Agent with the Social Security Administration – Office of Inspector General (SSA-OIG) and from October 2015 until March 2022. Prior to my employment at SSA-OIG, I was a Special Agent with the Internal Revenue Service – Criminal Investigation (IRS-CI) division from August of 2009 until October 2015. I am authorized and assigned to investigate violations of federal laws, including 21 U.S.C. §§ 841(a)(1), 846, 848, and 843(b) of the Drug Abuse Prevention and Control Act of 1970; that is, possession with intent to distribute and the distribution of controlled substances, conspiracy to commit such offenses, the operation of a continuing criminal enterprise, and the use of a communication facility to facilitate a felony violation of the Drug Abuse Prevention and Control Act of 1970. I have participated in investigations alleging violations of numerous federal crimes including fraud, conspiracy, money laundering, theft and drug trafficking. I have also acquired knowledge and information about the illegal drug trade and the various meansand methods by which it is furthered including through the use of computers, smart phones, digital media and the Internet from formal and informal training, other law enforcement officers and investigators, informants, individuals I have arrested and/or interviewed, and from my participation in other

investigations.  I am currently detailed to the High Intensity Drug Trafficking Area (HIDTA) Interdiction Taskforce (HIT) located at the Portland Police Bureau's (PPB) Narcotics and Organized Crime (NOC) Unit.

2.This affidavit is based upon a joint investigation conducted by the Portland Police Bureau (PPB) Central Bike Squad, PPB Central Neighborhood Response Team (NRT), Homeland Security Investigations (HSI), and the Federal Bureau of Investigation (FBI).

**Purpose of Affidavit**

3.This affidavit is submitted to support a criminal complaint and arrest warrant for Erick Omar DALA-ESCOTO, a Hispanic male, date of birth 01/xx/1995 (hereinafter referenced as "ESCOTO") for committing the crime of Possession with Intent to Distribute 400 grams or more of a Mixture and Substance containing a Detectable amount of Fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A).

4.I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and, from records, documents and other evidence obtained during this investigation.  I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other related investigations.

**Summary of Probable Cause**

5.Since the beginning of 2023, members of PPB NRT have conducted an ongoing investigation of multiple fentanyl dealers working primarily in the area of SW 6th Avenue and SW Washington Street in downtown Portland, Oregon.  After conducting surveillance over the course of several weeks, Officer Arnold with PPB was able to identify several unknown Hispanic males who were consistently in the area conducting hand-to-hand narcotics transactions.  Officer Arnold

identified these individuals by the clothing they wore, bags they carried, and physical characteristics such as body type, haircut, etc. Officer Arnold noted specific dates and times when narcotics transactions were conducted and developed probable cause to arrest these individuals. Further, Officer Arnold witnessed these individuals showing each other their phones, displaying money to each other, and showing each other bags of narcotics, which led him to believe they were working together in order to sell fentanyl.

6. On August 23, 2023, PPB NRT and PPB Central Bike Squad Officers, with assistance from HSI and FBI, conducted an operation to arrest the individuals identified by Officer Arnold. Surveillance was set up in the area of SW 6th Avenue and SW Washington Street. Officer Arnold was able to positively identify six unknown Hispanic males who he had previously developed probable cause to arrest for distributing narcotics.

7. When PPB Officers approached, five of the Hispanic males fled on foot and one fled on an electric scooter. PPB Officers were able apprehend four of the Hispanic males and one was later identified as ESCOTO. ESCOTO was arrested at the corner of SW 5th Avenue and SW Alder Street near a TriMet bus stop. When ESCOTO was taken into custody he had two cell phones in his possession, one iPhone and one Samsung.

8. Following the foot pursuit of ESCOTO, PPB Officer Baer went back and found a backpack containing several clear plastic bags he identified as counterfeit M30 fentanyl pills, fentanyl powder, and two bags of fentanyl powder that were laying on the ground on the north curb line of SW Alder Street between SW 5th and 6th Avenue and along the path ESCOTO fled. Officer Baer seized that backpack which he described as "a very distinctive BACKWOODS backpack with patches on the back."

///

**Affidavit of Special Agent David Slafsky**                                                                 Page 3

9. After ESCOTO was apprehended, PPB Officer Kenney found a total of eight bags containing a mix of what he believed were counterfeit M30 fentanyl pills and powder on the ground near the TriMet bus stop located at the northwest corner of SW Alder Street and SW 5th Avenue.

10. Officer Arnold reviewed TriMet platform camera videos and was able to provide me with the below photographs of ESCOTO wearing the same backpack that is described above in paragraph 8:

 

11. Officer Baer used a MobileDetect field test kit to test samples of both the suspected counterfeit M30 pills and the suspected fentanyl powdered found in ESCOTO's backpack and received a positive alert for the presence of fentanyl, a Schedule II controlled substance. ESCOTO's backpack contained approximately 587.1 grams of counterfeit M30 fentanyl pills (approximately 5,645 pills) and approximately 134.4 grams of powdered fentanyl.

12. A picture of the items seized from ESCOTO's backpack is below:

///



      13.     I know that drug traffickers are increasingly selling counterfeit M30 prescription pills that are manufactured with fentanyl, a Schedule II controlled substance. These counterfeit pills are designed to replicate real 30 mg Oxycodone pills, which are round, often blue in color, and stamped with an "M" and "30" on them and weigh approximately 1/10th of a gram. I have seen and been involved in the seizure of tens of thousands of these counterfeit M30 pills and both field tests and forensic laboratory analysis conducted on samples of these pills have confirmed the presence of fentanyl within them. I know a typical user of fentanyl will either buy powdered fentanyl or counterfeit M30 pills that they will then burn it on a piece of tin foil and inhale the fumes. Sometimes a user will simply ingest the pills or inhale the powdered fentanyl. These M30 pills can sell on the street to a user for as little as .50 cents a pill. Depending on their level of addiction, I know that a typical fentanyl user buying pills may buy and use between one (1) and 20 pills a day, and sometimes more. I know that a user of powdered fentanyl will use it in quantities of less than 1/10 of a gram. I also know that dealers of pills will often buy pills in bulk quantities and then repackage the pills into smaller quantities. I know that dealers of powdered fentanyl will

often buy fentanyl in larger quantities and then break off and sell it in smaller qualities of a gram or less. I know that a person possessing over a thousand suspected M30 pills manufactured with fentanyl and/or over one-hundred grams of fentanyl powder does not possess these pills and powder for personal use but rather such a quantity indicates that they are possessed for purposes of further distribution.

14. PPB Officer Torres interviewed ESCOTO in the Spanish language after advising him of his *Miranda* rights in the Spanish language. ESCOTO acknowledged his *Miranda* rights and agreed to answer questions. The interaction between ESCOTO, Officer Torres and myself was recorded using a PPB issued body worn camera. ESCOTO was interviewed in Spanish and stated the following:

- ESCOTO initially denied any knowledge of drugs and said he ran because the other Hispanic males he was hanging out with told him to run.

- ESCOTO initially denied any knowledge about a backpack containing narcotics.

- I showed ESCOTO the first photograph from paragraph 10 above and he confirmed that it was him. I then showed ESCOTO the second photograph from paragraph 10 above and he initially denied that it was him.

- I explained to ESCOTO that the photographs showed him holding the backpack which contained a significant amount of narcotics. I recognize that the person depicted in the photographs is ESCOTO. ESCOTO then said that he was holding the backpack for a friend and it did not belong to him.

- ESCOTO eventually admitted to ditching the backpack while running from PPB, as well as the narcotics that were found by Officer Kenney (from paragraph 9 above) near the TriMet bus stop.

- ESCOTO stated he'd been buying 1,000 M30 pills per night for $500 and selling the pills for $1 each.

15. The narcotics collected from near the bus stop at SW Alder Street and SW 5th Avenue consisted of approximately 91.9 grams of counterfeit M30 fentanyl pills and 24.4 grams of powdered fentanyl. In total, ESCOTO admitted to possession of approximately 679 grams of counterfeit M30 fentanyl pills (approximately 6,528 pills) and 168.8 grams of powdered fentanyl. ESCOTO also had $536 dollars in U.S. currency and a digital scale.

### Conclusion

16. Based on the foregoing, I have probable cause to believe, and I do believe, that Erick Omar DALA-ESCOTO has committed the crimes of Possession with Intent to Distribute 400 grams or more of a Mixture and Substance containing a Detectable amount of Fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A). I therefore request that the Court issue criminal complaints and arrest warrant for ESCOTO.

///

///

///

17.     Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Scott Kerin. AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
David Slafsky Special Agent
Homeland Security Investigations

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at  4:50 p.m.  on August  24 , 2023.

*Stacie F. Beckerman*
_____
HONORABLE STACIE F. BECKERMAN
UNITED STATES MAGISTRATE JUDGE